|   |   |   |
|---|---|---|
| 1 | **UNITED STATES DISTRICT COURT** | |
| 2 | **DISTRICT OF NEVADA** | |
| 3 | PHILLIP MURRY, | Case No.: 2:17-cv-157-APG-CWH |
| 4 | Plaintiff | **Order (1) Granting in Part Defendants' Motion for Summary Judgment and (2) Denying Plaintiff's Objection to Evidence** |
| 5 | v. | |
| 6 | CITY OF NORTH LAS VEGAS POLICE DEPARTMENT; SGT. MICHAEL BOOKER; and DOES 1-10, inclusive, | [ECF Nos. 29, 53] |
| 8 | Defendants | |

Plaintiff Phillip Murry sues defendants North Las Vegas Police Department (NLVPD) and NLVPD Sergeant Michael Booker alleging a variety of civil rights violations and torts stemming from an incident in which Booker shot and detained Murry. The defendants move for summary judgment on all of Murry's claims except for his claim for negligence. Murry opposes and objects to an exhibit attached to the defendants' reply.

Genuine issues of material fact remain such that a reasonable jury could find in favor of Murry on Claims 1, 2, 5, 6, 8, and 9 and could find that Booker's actions warrant punitive damages for those claims. I therefore deny the defendants' motion for summary judgment on those claims and on punitive damages. However, Murry does not present evidence sufficient to establish that NLVPD had policies or practices that caused the alleged constitutional violations, so I grant summary judgment to the defendants on Claim 4. And Murry's substantive due process claim fails as a matter of law, so I grant summary judgment to the defendants on Claim 3. I also overrule Murry's objection to evidence.

/ / / /

/ / / /

# I. BACKGROUND

## A. Procedural Summary

Murry filed this civil rights lawsuit seeking compensatory and punitive damages against NLVPD and Booker. He asserts the following claims for relief:

- Claim 1: Unreasonable Search and Seizure—Search and Seizure Without Reasonable Suspicion or Probable Cause against Booker;
- Claim 2: Unreasonable Search and Seizure—Excessive Force against Booker;
- Claim 3: Substantive Due Process against Booker;
- Claim 4: Municipal Liability for Unconstitutional Custom or Policy against NLVPD;
- Claim 5: False Arrest/False Imprisonment against NLVPD and Booker;
- Claim 6: Battery against NLVPD and Booker;
- Claim 7: Negligence against NLVPD and Booker;
- Claim 8: Intentional Infliction of Emotional Distress against NLVPD and Booker;
- Claim 9: Unreasonable Search and Seizure—Excessive Force and Denial of Medical Care against Booker.

ECF No. 1. Claims 1, 2, 3, 4, and 9 are federal claims brought under 42 U.S.C. § 1983. Claims 5, 6, 7, and 8 are Nevada state law claims. *Id.*

The defendants move for summary judgment on all claims except for Claim 7 and on Murry's request for punitive damages. ECF No. 29. Murry opposes the motion and objects to a newspaper article about accidental shootings that the defendants submitted as part of their motion for summary judgment, arguing the article is hearsay. ECF No. 53.

## B. Factual Disputes

All of Murry's claims depend on at least one of these three factual allegations: (1) that Murry's behavior did not warrant a stop and seizure by Booker, (2) that Booker intentionally

shot Murry or recklessly discharged his weapon, and (3) that Booker did not provide immediate medical attention to Murry. The defendants dispute each of these allegations.

*i. Murry's Behavior Leading Up to Booker's Stop*

On the evening of January 2, 2017, NLVPD's SWAT team was activated for a potential hostage rescue near the 2200 block of Statz Street in North Las Vegas. Booker, who was a SWAT Sergeant at the time, was assigned to the back of the residence near 2240 Ellis Street. Booker was in the middle of the street in the driver's seat of a darkly colored armored transport vehicle (a SWAT "bearcat"). He was armed with a 9 mm Glock handgun that was equipped with a tactical flashlight under the barrel. The flashlight had two methods of activation: a switch located on the flashlight and a pressure sensor located directly below the trigger guard. Around 12:30 a.m., Murry was driving home in a maroon Toyota. While driving north on Ellis Street, he came upon Booker in the bearcat vehicle. ECF Nos. 1; 29; 41. The remaining events are disputed by the parties.

Booker testified that one of his main responsibilities that night was to ensure the safety of the officers involved in the SWAT operation occurring on the other side of the block, and that he placed the bearcat in the middle of the road to prevent vehicles from driving past him and the other officers. ECF No. 29-2 at 60-61 and 64-67. However, elsewhere in his deposition Booker testified that it was not his "goal" to stop traffic on Ellis Street. ECF No. 29-2 at 69. And Lieutenant James Brown, the officer working in the command post at the time, testified that Booker was only responsible to provide equipment and stay with the bearcat in case evacuation was necessary, not to provide any rear security or to stop cars from traveling along Ellis Street. ECF No. 41-14 at 15, 21-22, and 35.

Booker claims that when Murry turned onto Ellis Street, the bearcat's emergency lights were on and that Murry stopped down the street and started to slowly creep forward toward Booker's vehicle. *Id.* at 81-81 and 86. As Murry approached Booker's vehicle, Booker exited and gave Murry hand signals to turn around and leave, and then yelled at Murry to stop his car, but Murry continued to move forward. *Id.* at 87-92. Booker felt Murry posed a potential physical threat to himself and the other officers, so he drew his weapon, and as Murry drove closer he raised his weapon to the "low ready" position. *Id.* at 90-91. Booker testified that at that point, he accidentally discharged his weapon, saw Murry reach down by his feet, and ordered Murry to put his hands in the air. *Id.* at 107 and 117-118. Hearing Booker yell, two nearby officers arrived at the scene, put Murry into custody, and searched Murry and his car. ECF No. 29-4 at 22-25 (Deposition of NLVPD Officer Robert Knickerbocker).

Murry disputes the defendants' version of these events. He testified that Booker did not turn on the bearcat's emergency lights until Murry drove closer to Booker's position,[1] and that when the lights came on, he stopped on the side of the road, rolled down his window to await instructions, and waited for one or two minutes. ECF No. 41-10 at 49. He then proceeded forward slowly. As his car came almost parallel with Booker's bearcat, Booker exited with his weapon drawn, yelled "Hey," took a step towards Murry's car, and fired his weapon. *Id.* Murry contends Booker never gave him verbal commands to turn his vehicle around. *Id.* at 80.[2]

---

[1] Murry also offers the deposition testimony of Knickerbocker, who testified that the emergency lights were not on just a few minutes prior to Booker discharging his weapon (ECF No. 41-11 at 13); and the statement of NLVPD Officer Kristen Bishop, who stated that "[t]here is no – the – his, um red and blues were on" (ECF No. 41-12 at 4). But later in his deposition, Knickerbocker testified that the lights were turned on before he walked away from the bearcat. ECF No. 41-11 at 16. And it is not clear whether Bishop's statement supports Murry's or the defendants' position.

[2] Murry also points to statements from Knickerbocker (ECF No. 29-4 at 19), NLVPD Officer Peter Nelson (ECF No. 41-16 at 7), and one of Murry's neighbors, Robbie Alvarez (ECF No. 41-

*ii. Booker Discharging His Weapon*

Booker testified that he discharged his firearm by accident. He alleges that he exited the bearcat without his weapon drawn, but as Murry continued to move his car forward, he drew his weapon and raised it to the low ready position. ECF No. 29-2 at 90-91. Because it was too dark to see inside Murry's vehicle, Booker attempted to activate the tactical flashlight attached to his weapon but accidentally pulled the trigger, discharging a single round into the front of Murry's car, which continued through the engine compartment and into Murry's left foot. *Id.* at 107.

Murry claims Booker's explanation of events is contradictory. Lieutenant Brown stated that Booker radioed in that he was able to see Murry in his car without the aid of his weapon's tactical light. ECF No. 41-20 at 2-3. Knickerbocker testified that it was light enough that he was able to see the shell casing from Booker's gun on the ground and could see Murry while Murry was still in his car. ECF No. 41-11 at 24-25 and 37. Also, Booker did not claim that the shooting was accidental until eight days after the incident, initially stating that he fired his weapon because he felt endangered by Murry. ECF Nos. 41-5 at 21 (Booker's January 11, 2017 investigative interview); 41-14 at 25-26 (Brown's depositional testimony); 42 at 20 (NLVPD Detective Mark Suranowitz's follow-up report).[3]

///

---

15 at 2), all of whom state that they did not hear any commands before Booker discharged his weapon. However, Alvarez states that he heard Booker shout something before discharging his weapon. *Id.*

[3] "Sgt. Booker gave conflicting information about what occurred right after the shooting compared to what he said during his interview eight days later." "The conflicting information included Sgt. Booker initially stating the driver of the vehicle, Murry, had turned the steering wheel of the vehicle toward him before Sgt. Booker fired his weapon. During the interview with Sgt. Booker, he said the driver did not turn his steering wheel toward him. Sgt. Booker said during the public safety statement that there was probable cause for the arrest of the driver of the vehicle for assault with a deadly weapon with the vehicle being the weapon. There is no evidence to support this charge."

5

*iii. Call for Medical Assistance and Alleged Arrest*

Relying on Knickerbocker's deposition testimony, the defendants contend that soon after Booker discharged his weapon, several other SWAT officers responded to the scene, placed Murry into custody, and searched Murry and his car. ECF No. 29-4 at 22-25. While Knickerbocker was performing a safety pat down of Murry, he heard Murry say something about his foot, noticed that Murry had been shot, and immediately called for medical assistance, which arrived within five minutes. *Id.* at 35-39. Defendants claim that none of the other officers, including Booker, was aware of Murry's injuries before Knickerbocker discovered them. Although the defendants admit Booker saw Murry reach near his feet immediately after Booker fired his weapon, they contend Booker believed Murry was potentially reaching for a weapon. ECF No. 29-2 at 117-118. The defendants contend that Murry, although handcuffed, was never under arrest during this time and that he was reminded of this multiple times by SWAT officers. ECF No. 30-1. After officers accompanied him to the hospital, Murry gave a voluntary statement and allowed Suranowitz to look through his phone. *Id.*

Murry testified that Booker intentionally shot him, saw him reach for his feet, and therefore knew he was injured. ECF No. 41-10 at 66. But Booker did not call for medical assistance and did not inform the other officers that he had fired his weapon. ECF No. 41-11 at 29.[4] Murry testified that it took at least ten minutes for medical assistance to arrive, during which time he was under arrest and handcuffed. ECF No. 41-10 at 66.[5]

---

[4] Knickerbocker testified at deposition that he never heard Booker say he fired a shot.

[5] Murry also submits two NLVPD Investigative Services follow-up reports which state that NLVPD Lieutenant Ojeda asked Booker if there was a crime committed and if there was probable cause to arrest, to which Booker responded in the affirmative. ECF Nos. 41-3 at 1 ("Q: What crime was committed? A: Assault with a Deadly Weapon (AWDW). Q: Is there probable cause to arrest? A: Yes."); 42 at 20.

## II. ANALYSIS

Summary judgment is appropriate if the pleadings, discovery responses, and affidavits demonstrate "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. 323. The burden then shits to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 531 (9th Cir. 2000). I view the evidence and reasonable inferences in the light most favorable to the nonmoving party. *James River Ins. Co. v. Hebert Schenk, P.C.*, 523 F.3d 915, 920 (9th Cir. 2008).

### A. Murry's "Substantive Due Process" Claim (Claim 3)

The defendants move for summary judgment on Murry's claim for substantive due process violations (Claim 3), arguing that a plaintiff cannot maintain a suit under both the Fourth and the Fourteenth Amendments. ECF No. 29 at 19. Murry does not respond to this argument except to generally state that "[t]here are triable issues of material fact regarding the excessive force claim under the . . . substantive due process claims . . . ." ECF No. 41 at 1.

"Where [an] excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment, which guarantees citizens the right "to be secure in their persons . . . against

unreasonable . . . seizures" of the person." *Graham v. Connor*, 490 U.S. 386, 394 (1989). Consequently, "*all* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." *Id.*

Murry's claim for substantive due process relies only on factual assertions of unreasonable search and seizure and excessive force, which are Fourth Amendment violations. ECF No. 1 at 10-11. I therefore grant summary judgment to the defendants on Claim 4 because the claim fails as a matter of law.

**B.     Remaining Federal Claims Against Booker (Claims 1, 2, and 9)**

The defendants move for summary judgment on the remaining three federal claims against Booker as an individual (Claims 1, 2, and 9), arguing that he is entitled to qualified immunity. ECF No. 29 at 20-23. They argue that qualified immunity is warranted because Booker's conduct did not violate any "clearly established statutory or constitutional rights." *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009). Specifically, they posit that the evidence unequivocally shows that (1) Murry's behavior leading up to Booker exiting the bearcat and discharging his weapon gave Booker probable cause to conduct an investigatory stop, (2) Booker accidentally discharged his weapon, and (3) Booker and the other officers provided Murry with medical assistance immediately upon discovery of his injury. ECF No. 29 at 20-23.

Murry responds that there are issues of material fact regarding his behavior leading up to the stop, whether Booker intentionally fired his gun, and the circumstances surrounding the medical attention he received; therefore, qualified immunity is not warranted at this stage. ECF No. 41 at 6- 8. Murry argues that there is evidence that (1) Booker did not have probable cause

to make the stop; (2) Booker used deadly force when he shot Murry, which was either intentional or reckless; and (3) Booker was aware of Murry's injury but did not tell the other officers, delayed the call for medical attention. *Id.*

I use "[t]he ordinary framework for deciding motions for summary judgment" when evaluating "motions for summary judgment based on official immunity." *Moreno v. Baca*, 431 F.3d 633, 638 (9th Cir. 2005) (citations omitted). To determine whether Booker is entitled to qualified immunity, I must "determine whether the facts show that (1) the officer's conduct violated a constitutional right; and (2) the right which was violated was clearly established at the time of the violation." *Espinosa v. City & Cty. of San Francisco*, 598 F.3d 528, 532 (9th Cir. 2010) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). If a "genuine issue of material fact exists that prevents a determination of qualified immunity at summary judgment, the case must proceed to trial." *Serrano v. Francis*, 345 F.3d 1071, 1077 (9th Cir. 2003).

There are genuine issues of material fact regarding the circumstances leading up to Booker stopping Murry and whether Booker intentionally fired his weapon at Murry. Both sides offer evidence and expert opinions in support of their positions. *See* ECF No. 30-3 at 4 (Report of W. Ken Katsaris), ECF No. 41-21 at 5-11 (Report of Roger Clark). Viewing the evidence in the light most favorable to Murry, a reasonable jury could find that Booker seized Murry by intentionally using deadly force without a reasonable basis and therefore violated Murry's clearly established Fourth Amendment rights. *See Tennessee v. Garner*, 471 U.S. 1, 7 (1985) ("While it is not always clear just when minimal police interference becomes a seizure, there can be no question that apprehension by the use of deadly force is a seizure subject to the reasonableness requirement of the Fourth Amendment. (citations omitted)); *Id.* at 11 ("Where the suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to

apprehend him does not justify the use of deadly force to do so."). I therefore deny the defendants' motion for summary judgment on Murry's claims for unreasonable search and seizure (Claims 1) and excessive force (Claim 2).

There are also genuine issues of material fact regarding whether Booker failed to provide immediate medical care for Murry's injury. Murry points to evidence supporting the assertion that Booker intentionally shot Murry, saw him reach for his feet, and therefore knew or should have known that Murry was injured. While this evidence is not particularly strong, viewing it in the light most favorable to Murry, a reasonable jury could find that Booker violated Murry's clearly established Fourteenth Amendment rights when he failed to tell the other officers that Murry was injured, thus delaying Murry's medical treatment and extending his pain. *See Lolli v. Cty. of Orange*, 351 F.3d 410, 418–19 (9th Cir. 2003) ("Claims of failure to provide care for serious medical needs, when brought by a detainee . . . who has been neither charged nor convicted of a crime, are analyzed under the substantive due process clause of the Fourteenth Amendment." (citations omitted)); *Maddox v. City of Los Angeles*, 792 F.2d 1408, 1415 ("Due process requires that police officers seek the necessary medical attention for a detainee when he or she has been injured while being apprehended by either promptly summoning the necessary medical help or by taking the injured detainee to a hospital."). I therefore deny the defendants motion for summary judgment on Claim 9.

**C.     State Law Claims (Claims 5, 6, and 8)**

The defendants move for summary judgment on the three state tort claims made against Booker and NLVPD (Claims 5, 6, and 8), arguing that Booker is entitled to discretionary immunity under Nevada Revised Statutes § 41.032, or, alternatively, that they are not liable for the claims more generally. ECF No. 29 at 20-23. They posit that discretionary immunity is

warranted because Booker was performing a discretionary function when he stopped and detained Murry and because his actions were not made in bad faith. They argue that "[a]n officer's decision as to how to accomplish a particular seizure or search is generally considered a discretionary act under Nevada law," including the use of lethal force. *Id.* at 24. Murry responds that Booker's decisions regarding the amount of force to use are not protected by Nevada's discretionary immunity statute, or, alternatively, that Booker was acting in bad faith. ECF No. 41 at 28-30.

> [N]o action may be brought under NRS 41.031 or against . . . an officer or employee of the State or any of its agencies or political subdivisions which is: based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of the state or any of its agencies or political subdivisions or of any officer, employee, or immune contractor of any of these, whether or not the discretion involved was abused.

Nevada Revised Statutes § 41.032. "Police officers 'exercise discretion and are thus generally immune from suit where the act at issue required personal deliberation, decision, and judgment,'" often including an officer's decision "as to how to accomplish a particular seizure or search." *Sandoval v. Las Vegas Metro. Police Dep't*, 756 F.3d 1154, 1168 (9th Cir. 2014) (quoting *Davis v. City of Las Vegas,* 478 F.3d 1048, 1059 (9th Cir. 2007)). However, "where an officer arrests a citizen in an abusive manner not as the result of the exercise of poor judgment as to the force required to make an arrest, but instead . . . because of a willful or deliberate disregard for the rights of a particular citizen or citizens, the officer's actions are the result of bad faith and he is not immune from suit." *Id.* (quoting *Davis*, 478 F.3d 1060).

As with the federal claims made against Booker, there are numerous factual questions surrounding the stop and seizure of Murry, such that a reasonable jury could find that Booker's actions and decisions were made in bad faith and are therefore not protected by discretionary

11

immunity. Viewing the evidence in the light most favorable to Murry, a reasonable jury could find that Booker intentionally shot and detained Murry without justification and the defendants' actions constituted false arrest, battery, and intentional infliction of emotional distress. I therefore deny the defendants' motion for summary judgment on Claims 5, 6, and 8.

**D.     Municipal Liability *Monell* Claim (Claim 4)**

Murry also brings a *Monell* claim against NLVPD for knowingly promulgating a policy, practice, or custom that caused the constitutional violations against him. Murry argues that even though the NLVPD's Deadly Force Review Board found Booker violated policy by using excessive force,[6] there was no investigation into whether Booker made commands to Murry and Booker was not appropriately disciplined. He also claims that Justin Roberts, who oversaw the Deadly Force Review Board presentation, was not aware that Murry was considered a suspect when Murry was interviewed by Suranowitz.

The defendants move for summary judgment on the *Monell* claim, arguing that Murry does not identify any specific NLVPD policies or practices. They also argue that Murry provides no evidence that the allegedly poor investigation into Booker's actions was connected to or indicative of any pre-incident policy that caused violations of Murry's rights. They also dispute that the investigation was insufficient, and offer evidence that Booker was transferred from the SWAT team and required to be retrained in the use of firearms. ECF Nos. 29-6 at 14; 29-2 at 21.

"To hold a police department liable for the actions of its officers, the [plaintiff] must demonstrate a constitutional deprivation, and show that the deprivation was visited pursuant to a police department custom or policy." *Munger v. City of Glasgow Police Dep't*, 227 F.3d 1082,

---

[6] Murry refers to a report by NLVPD's Deadly Force Review Board, but did not attach it to opposition.

12

1087 (9th Cir. 2000) (citing *Monell v. Dep't of Social Servs.,* 436 U.S. 658, 690–91 (1978)). To meet this standard, a plaintiff can show that the specific policy or practice at issue is unconstitutional. "But where the policy relied upon is not itself unconstitutional, considerably more proof than the single incident will be necessary in every case to establish both the requisite fault on the part of the municipality, and the causal connection between the 'policy' and the constitutional deprivation." *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 824 (1985). Murry's evidence in support of his *Monell* claim relates only to the investigation of Booker's actions. He presents no evidence of a more widespread policy or how that policy resulted in the violations he is claiming, other than to nakedly argue that they are connected. Based on that, no reasonable jury could find for Murry on his *Monell* claim. I therefore grant summary judgment to the defendants on Claim 4.

**E.      Punitive Damages**

The defendants move to dismiss Murry's demand for punitive damages, arguing that there is insufficient evidence that Booker or NLVPD acted with "evil motive or intent, or [with] a reckless or callous indifference to the constitutional rights of others." ECF No. 29 at 27-29 (quoting *Dang v. Cross*, 422 F.3d 800, 807 (9th Cir. 2005)).

There are genuine issues of material fact regarding Booker's motive, justification, and intentions in shooting Booker, and whether he knew that Murry was injured but failed to inform the other officers. Viewing the evidence in the light most favorable to Murry, a reasonable jury may find that his actions warrant the imposition of punitive damages. I therefore deny the defendants' motion for summary judgment on Murry's demand for punitive damages.

/ / / /

/ / / /

## III. MURRY'S OBJECTION TO EVIDENCE

Murry objects to a newspaper article concerning accidental shootings deaths that the defendants included as an exhibit to their reply. ECF No. 50-1. Murry argues that the article is inadmissible hearsay according to Federal Rule of Evidence 802. The article did not influence my decision regarding the defendants' motion, so I overrule Murry's objection as moot.

## IV. CONCLUSION

IT IS THEREFORE ORDERED that the defendants' motion for summary judgment **(ECF No. 29) is GRANTED** as to Claims 3 (Substantive Due Process) and 4 (*Monell* liability), **DENIED** as to all other claims, and **DENIED** as to the plaintiff's request for punitive damages. Claims 3 and 4 are dismissed with prejudice.

IT IS FURTHER ORDERED that the plaintiff's objection to evidence **(ECF No. 53) is OVERRULED**.

DATED this 30th day of March, 2019.

_____
ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE